FILED
2011 Mar-29  AM 10:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **GEORGE RUSSELL HAWKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. CV-09-BE-2107-M** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

The claimant, George Russell Hawkins, filed an application for a period of disability and disability insurance benefits on May 22, 2007, and a Title XVI application for supplemental security income (SSI) on February 13, 2007, alleging disability beginning on February 13, 2007. The claimant later amended the disability onset date to March 1, 2006. The application was denied and the claimant then filed a timely request for a hearing before an Administrative Law Judge (ALJ) on September 10, 2007. The claimant appeared and testified at a hearing before the ALJ on April 30, 2009. In a decision dated July 8, 2009, the ALJ held that the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. The claimant then filed a request with the Appeals Council of the Social Security Administration, whereupon the Appeals Council denied the claimant's request for review. The claimant has exhausted his administrative remedies, and this court has jurisdiction under 42 U.S.C §§ 405(g) and 1631(c)(3). For the reasons stated below, the decision of the Commissioner will be **AFFIRMED**.

## II.  ISSUES

The claimant appeals to this court to reverse the ALJ's decision based on the following issue: Whether substantial evidence supports the ALJ's application of the pain standard, and thus the discrediting of the claimant's allegations of pain, regarding his physical ailments.

## III.  STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether substantial evidence in the record as a whole supports the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *See Richardson*, 401 U.S. at 401.

In a Social Security case, the court reviews *de novo* the legal principles upon which the ALJ's decision is based, while determining the factual conclusions of the ALJ under a *substantial evidence* standard of review.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 1997).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The substantial evidence standard permits administrative decision makers to act with considerable latitude, and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Even if this court would disagree with the Commissioner's findings, the court must affirm the findings if they are supported by substantial evidence. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.  LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*[1], 800 F.2d 1026, 1030 (11ᵗʰ Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The Eleventh Circuit applies a three-part test that applies when a claimant attempts to establish disability through testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition in addition to either (1) objective medical evidence that confirms the severity of the alleged pain, or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to cause the claimant's alleged pain. *Id.* When the objective medical evidence does not confirm the severity of the alleged pain, the question becomes whether the underlying medical condition could reasonably be expected to give rise to the alleged pain. This determination is a question of fact for the ALJ subject to the substantial evidence standard of review. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988). In applying this test, the ALJ must explicitly articulate his reasons for rejecting the plaintiff's subjective complaints of pain; if the ALJ fails to properly articulate his reasons for discrediting the plaintiff's subjective complaints of pain, the testimony must be accepted as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

## V.  FACTUAL HISTORY

The claimant alleged disability because of back pain, neck stiffness, and weakness in his

---

[1] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

arms and hands.[2]  (R. 131).  The claimant has a ninth grade education and most recently held a

job at Budweiser as a route salesman.  (R. 39).  He alleged that his disabling back pain began

after he was involved in a work-related accident in 2000.

While at work on February 10, 2000, the claimant was involved in a motor vehicle

accident with a garbage truck and suffered a direct blow to his upper and lower back.  (R. 157).

Between the months of April and October 2000 (i.e. the months immediately following the

claimant's work-related accident), the claimant presented twelve times to physicians complaining

of back pain.  (R. 151-166).  Upon presenting at Gadsden Orthopedic Associates on July 13,

2000, complaining of severe back pain, Dr. Gregory Washburn, an orthopedic specialist, found

that the claimant had normal motor strength and reflexes, but a decreased range of motion in

flexion (70 degrees) and extension (10 degrees) of the lumbar spine.  Additionally, an x-ray

revealed a slight compression at the T11 thoracic vertebra and a subtle herniated disc at the L3-

L4 level.  (R. 157).  At this time, the claimant received an epidural, which decreased his pain.

(R. 158).

However, at the claimant's last recorded hospital visit in 2000, Dr. William Haller, an

orthopedic specialist at Gadsden Orthopedic Associates, noted that while the claimant continued

to complain of back pain, repeated MRIs showed no evidence of any disc herniation.  (R. 151).

Dr. Haller noted that he believed the claimant had a neuropathy (nerve damage)  that was not

responding to non-steroidals and regular physical therapy.  Dr. Haller additionally noted that he

had tried to send the claimant back to light duty work, but the claimant refused, stating that his

---

[2]Because the claimant does not mention his alleged hand/ arm pain in his brief to this
court, the court assumes that the claimant does not dispute the ALJ's findings in this regard.
Therefore, the court will not discuss the claimant's hand/ arm pain in "Factual History."

employers would not allow him to work.  (R. 151).

On August 8, 2005, the claimant again presented to Riverview Regional Medical Center complaining of lower back pain, which he had triggered by bending over that same day.  Upon examination, Dr. Michael Morris, a doctor of osteopathy (same training as medical doctors with increased chiropractic training), noted that the claimant had lower back pain associated with muscle spasms  (R. 168).  In addition to placing the claimant in physical therapy, Dr. Morris advised him to apply ice to his back three to four times a day for less than twenty-five minutes each time.  (R. 168).

On September 9, 2005, the claimant returned to Riverview complaining of lower back pain.  (R. 172).  Upon examination, Dr. Morris again diagnosed the claimant with lower back and left lower limb pain associated with muscle spasms and "lumbar degenerative disc disease with small left posterolateral L3-L4 disc herniation."  (R. 172).  Dr. Morris noted that the claimant was to undergo surgery concerning his L3-L4 disc pain.  Additionally, Dr. Morris prescribed the claimant Lortab to take as needed.  (R. 172).  However, in a follow-up evaluation of the claimant, Dr. Morris noted that the claimant never underwent surgery and that, in fact, such surgery was no longer recommended.  (R. 173).  While Dr. Morris noted that the claimant previously had undergone epidural steroid injections, which he claimed did not relieve his pain, he also noted that the claimant had "maximum medical improvement" and had completed a functional capacity evaluation, which found that he was able to work with some restrictions.  (R. 173).

The medical records show that Dr. Clay Rowe, a general practicioner, saw the claimant several times for check-ups regarding his lower back pain from 2002 to 2008.  (R. 206-35, 356-63).  In each of Dr. Rowe's reports, he noted that, while the claimant suffered from lower back

6

pain and was taking prescribed medications, he was in no "acute distress." (R. 206, 208, 210, 212, 214, 216, 356, 358, 360, 362).

According to the medical records, Dr. Michelle Turnley, a board certified physical medicine and rehabilitation specialist, also treated the claimant from January 2006 to February 2007. (R. 255-74). Upon examination of the claimant in January 2006, Dr. Turnley found that the claimant had a full range of motion in his lumbar spine without pain, as well as adequate strength throughout. (R. 256). Dr. Turnley assessed the claimant as having lumbar degenerative disc disease and scheduled a follow-up appointment with him in three weeks. Three weeks later at his follow-up appointment, the claimant informed Dr. Turnley that had re-injured his back while lifting and bending with a twenty pound box at work. (R. 257). Dr. Turnley assessed the claimant as having a sprained back and lower back pain and noted that the claimant had requested stronger pain medication, but she had refused to prescribe such medication and, instead, prescribed the claimant Darvocet.[3] (R. 257). Upon completing the examination, Dr. Turnley stated that the claimant "is to return to work conditioning." (R. 257). Similarly, on April 13, 2006, Dr. Turnley, after assessment of the claimant, concluded that "he should be able to perform his regular job." (R. 261). Additionally, on December 8, 2006, Dr. Turnley performed an MRI on the claimant, which showed that the claimant had minimal degenerative changes in his back and no evidence of herniation or spinal stenosis (narrowing of the spine). (R. 279-82). Additionally, in 2007, Dr. Turnley noted that, while the claimant had a "little bit" of diminished range of motion in his lumbar spine, he had a normal gait and was able to get on and off of the

---

[3]Dr. Turnley later refused to prescribe the claimant any more narcotic medications after a drug screening showed that he was noncompliant with dosing directions. (R. 278).

exam table and in and out of his chair without difficulty.  (R. 271).  Similarly, in an examination

that same year at Riverview Regional Medical Center, the claimant complained of foot pain, but

denied any musculoskeletal pain.

On February 23, 2006, the claimant presented to Emege Nchege, a Certified Work

Capacity Evaluator, for an assessment of his physical abilities and limitations relative to his

current functional status.  Nchege found that the claimant was able to return to work with the

following limitations: (1) he could lift or carry more than thirty pounds on an occasional basis;

(2) his unilateral carrying should not exceed twenty pounds; and (3) he should avoid stooping,

kneeling, and crouching.  (R. 283).

Additionally, at the request of the Social Security Administration, Dr. June Nichols, a

licensed psychologist, examined the claimant.  After examination, Dr. Nichols assessed the

claimant as having recurrent and moderate depressive disorder with a GAF score of sixty.  (R.

298).  However, Dr. Nichols noted that the claimant did not have deficits that would interfere

with his ability to remember, understand, or carry out work-related activities.  (R. 298).

In 2008, the claimant was treated periodically by Dr. Kathleen Strickland, a pain

specialist from Southeastern Pain Management, for back and leg pain.  Dr. Strickland, like the

claimant's previous physicians, diagnosed the claimant with lower back pain and degenerative

joint and lumbar spine disease.  (R. 343).  Dr. Strickland prescribed the claimant Cymbalta and

suggested that he begin water therapy for weight control and muscle stretching.

## VI.  ALJ PROCEEDINGS

### A.  Hearing

The claimant attended and testified at a hearing before the ALJ on April 30, 2009.  The

claimant was forty-four years old at the time of the hearing and had a ninth grade education.  (R. 31).  He did not receive a GED or any vocational certificates.  The claimant's previous jobs include product deliverer for Buffalo Rock, product deliverer for ABS Vending, truck driver for Supreme Beverage, garbage truck driver for BFI, and route salesman for Budweiser.  (R. 31, 40).

The claimant testified that he suffered from a "burning, stinging, and stabbing" pain in his lower back that radiates down into his left leg, as well as depression. (R. 45-46).  He claimed that his daily activities include getting out of bed to get a drink and brush his teeth and then returning to a laying or sitting position where he watches television for the remainder of the day.  (R. 52).  Occasionally, however, the claimant testified that he goes outside and sits on a lawn chair to get some fresh air.  (R. 53).  The claimant also testified that he probably could walk only about ten yards without pain and could lift no more than a soft drink.  He additionally testified that he could not sit for long periods of time.  (R. 51).  The claimant also alleged that his pain medication caused him to suffer from sleeping problems.  (R. 51).  Although the ALJ stated that he did not immediately believe the claimant met a listing, the claimant's attorney argued that the claimant met  listings 1.04 and 12.04.  (R. 53).

The claimant testified that on the last day he worked, in March of 2006, he was working at Budweiser when his boss informed him that the claimant's doctor said that he was no longer capable of working.  (R. 34).  However, such prohibition is not specifically reflected in the medical records.  The claimant's attorney argued that the claimant could not continue working because his place of employment, Budweiser, did not have any available positions that would meet the restrictions placed on him by Dr. Turnley.  (R. 34).

The claimant testified that he had not been hospitalized since March of 2006, but rather,

that he had undergone several epidural "day surgeries." (R. 35). He additionally stated that he had been to the emergency room two or three times in the past two years for pain. (R. 37). While the claimant testified that physicians have recommended that he have surgery for his back pain, the claimant's attorney concedes that such recommendation is not evidenced in the medical records. (R. 36).

Following the claimant's testimony, Marcia Schulman, a vocational expert (VE) testified regarding the claimant's ability to work. The ALJ posed a hypothetical situation to the VE wherein the VE would consider a person of the claimant's age, skill, and mental and physical limitations in determining whether jobs exist in the national community that such person would be able to perform. (R. 56-57). The ALJ limited the hypothetical person to light work activity that did not include climbing and only occasional crouching or crawling. The ALJ also specified that the hypothetical person should avoid concentrated exposure to extreme temperatures, humidity, and hazards, as well as perform jobs that are limited to tasks that can be learned in thirty days or less and involve no more than simple work-related decisions. (R. 57). While the VE testified that such hypothetical person could not perform any of the claimant's past work, she stated that he could perform other jobs, such as assembler, hand packer, and rater sorter, which exist in substantial numbers in the national economy. (R. 57).

The ALJ then asked the VE whether a person with the previously mentioned limitations *and* the need for a sit/stand option would be able to perform jobs in the national economy. The VE answered affirmatively and listed jobs such as machine packer and assembler. (R. 58). Additionally, the claimant's attorney posed her own question to the VE wherein she inquired as to whether a person with the claimant's physical complaints plus depression, lack of

10

concentration and memory, and inability to interact with others would be able to work.  (R. 59).
The VE responded that, given all of these limitations and ailments, the hypothetical person would
not be able to work on a full time basis.

### B.  ALJ Opinion

In deciding whether the claimant is "disabled" under sections 216(i), 223(d) and
1614(a)(3)(A) of the Social Security Act, the ALJ applied the five-step evaluation set forth by the
Social Security Administration. *See* 20 C.F.R.§ 416.920(a).  First, the ALJ held that the claimant
has not engaged in disqualifying substantial gainful activity since the alleged disability onset
date.  (R. 20).  Additionally, under the second step of the analysis, the ALJ found that the
claimant has the following severe impairments: degenerative disc disease of the lumbar spine,
depression, and mild degenerative disc disease of the cervical spine.

In applying the third step, the ALJ held that the claimant does not have an impairment or
combination of impairments that meets or medically equals one of the listed impairments in 20
CFR Part 404, Subpart P, Appendix 1.  The ALJ addressed the claimant's argument that he meets
listings 1.04, "disorder of the spine," and 12.04, "affective disorders," in explaining that 1.04 is
not met because the medical records support neither an impairment in the claimant's ability to
walk nor evidence of nerve root compression, arachnoiditis, or pseudoclaudication of the severity
necessary to meet listing 1.04.  (R. 22).  Similarly, the ALJ explained that the claimant's mental
impairments do not meet listing 12.04 because "the claimant has *at most* mild difficulties due to
his mental impairment" and, therefore, his mental ailments do not cause at least two "marked"
limitations or one "marked" limitation and repeated episodes of decompensation as required
under listing 12.04.  (R. 22) (emphasis added).  Instead, the ALJ found that the claimant has a

residual functional capacity (RFC) to perform light work

> except he is limited to task[s] that can be learned in 30 days or less involving no more than simple work-related decision with few workplace changes (unskilled work); he cannot be required to constatnly interest with the public, coworkers and supervisors; he cannot climb ladders, ropes, or scaffolds; only occasional crouching or crawling; avoid concentrated exposure to extreme temperature, humidity, and hazards such as open machines and heights; and needs the opportunity to alternate sitting and standing at one hour intervals.

(R. 24).

Additionally, the ALJ applied the pain standard to the claimant's allegations and pain and held that, while the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the claimant's statements regarding the intensity, persistence, and limiting effects of the alleged symptoms are not credible. (R. 24). The ALJ explained that the results of several imaging tests performed on the claimant, as well as examinations by his treating physicians suggest that the claimant's pain and severity should be less severe than alleged. The ALJ also reasoned that the fact that the results of the claimant's drug test led one of his treating physicians to stop prescribing him narcotics raises credibility concerns. (R. 24). In reaching his credibility decision, the ALJ gave great weight to the opinion and reports of all of the claimant's treating physicians, as well as the State agency's consultants. (R. 25).

In applying the fourth step of the analysis, the ALJ found that the claimant is unable to perform any of his past relevant work. (R. 25). However, under the fifth step, the ALJ held that, based on the testimony of the VE and considering the claimant's age, education, work experience, and RFC, the claimant could perform several jobs that exist in significant numbers in the national economy. Thus, the ALJ concluded that the claimant was not disabled under

12

sections 216(i) and 223(d) of the Social Security Act.  (R. 26).

## VII.  POST ADMINISTRATIVE PROCEEDINGS

After the ALJ hearing and appeal to this court, the claimant filed a "Motion to Remand" requesting that the court remand the case to consider what the claimant characterized as new, non-cumulative, material evidence of disability.  However, because the new evidence covered dates *after* the ALJ hearing and the claimant failed to establish that such evidence related to his condition during the relevant period of events or could have reasonably been expected to change the ALJ's decision, the court did not find the evidence to be "material."  Accordingly, the court held that the claimant had not satisfied the criteria to support remand under sentence six of 42 U.S.C. § 405(g).

## VIII.  DISCUSSION

The claimant's sole argument is that the ALJ's use of the pain standard to discredit his allegations of pain was not supported by substantial evidence.  (Pl.'s Brief 2).  The claimant argues that this failure is reversible error and requests this court to either reverse and award payment to the claimant, or to reverse and remand the case for further proceedings.  (Pl.'s Brief 11).

To satisfy the pain standard, evidence of an underlying medical condition must exist, in addition to either (1) objective medical evidence that confirms the severity of the alleged pain, or (2) objectively determined medical condition of such severity that it reasonably can be expected to cause the claimant's alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  When the objective medical evidence does not confirm the severity of the alleged pain, the question becomes whether the underlying medical condition could reasonably be expected to

13

give rise to the alleged pain.  This determination is a question of fact for the ALJ subject to the substantial evidence standard of review.  *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988).  In applying this test, the ALJ must explicitly articulate his reasons for rejecting the plaintiff's subjective complaints of pain; if the ALJ fails to properly articulate his reasons for discrediting the plaintiff's subjective complaints of pain, the testimony must be accepted as true.  *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  However, the court does not re-weigh evidence or substitute its judgment for that of the ALJ, but instead reviews the entire record to determine if the decision reached is *reasonable* and supported by *substantial evidence*.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  Substantial evidence is such relevant evidence that a *reasonable* person might accept as adequate to support the given conclusion.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

In the present case, the ALJ discredited the claimant's allegations of constant and disabling pain in his back and lower legs.  (R. 24).  While the ALJ did find that the claimant's medically determinable impairments could reasonably be expected to cause at least some of the alleged symptoms, he held that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible.  (R. 24).  The ALJ discussed specific reasons for discrediting the claimant's allegations of pain, such as: (1) the claimant's allegations of pain were inconsistent with the RFC adopted by the ALJ; (2) the medical record as a whole does not support the claimant's allegations of constant, debilitating pain; (3) numerous imaging tests, as well as some of the claimant's treating physicians suggested that the claimant's pain was not as severe as he alleged; and (4) the fact that Dr. Turnley, one of the claimant's treating physicians, refused to continue prescribing the claimant narcotic medications because a drug test

14

found that he did not follow dosage instructions raises credibility issues.  (R. 24).  Thus, because

the ALJ specified the reasons on which he relied to discredit the claimant's allegations of pain,

the court finds that the ALJ met the specificity requirements of the pain standard and, therefore,

supported his conclusion with substantial evidence.

    While the claimant suffers from degenerative disc disease, the medical record as a whole

does not support his allegations of severe, constant, and debilitating pain, which he alleges

preclude him from working.  For example, only months after the claimant's work-related

accident, the alleged main cause of his back problems, an MRI performed by Dr. Haller found

"no evidence of any disc herniation or any impingement at all on the cord."  (R. 151).  In this

report, Dr. Haller noted that he had *tried* to send the claimant back to work, but the claimant

refused to go, claiming that his employer will not let him work.  (R. 151).

    Additionally, in a 2005 examination of the claimant, Dr. Morris noted that, while the

claimant had "mild to moderate tenderness" in his lower back, he had no sensory or strength

deficit in his lower limbs.  Dr. Morris simply advised the claimant to place ice on his back a few

times a day to help with the pain and take Skelaxin, a muscle relaxer, as needed.  (R. 168).

Similarly, in March 2006, the same month the claimant alleges he became disabled, Dr. Turnley,

one of the his treating physicians, noted that the claimant had a full range of motion in all of his

joints with no pain and a coordinated and smooth gait.  (R. 208).  Dr. Turnley additionally noted

that, at this time, the claimant walked without assistive device and did "not exhibit any acute pain

behaviors."  (R. 259).  She also stated that the claimant "can return to work at his previous

position."  (R. 259).  Similarly, one month later, in April 2006, when the claimant returned to Dr.

Turnley claiming an inability to work because of back pain, she again noted that, after

15

examination of the claimant, his job description, and his functional capacity evaluation, he should be able to perform his regular job.  (R. 261).

Doctors' reports from 2006 to 2009 also reflect the previously discussed conclusions.  In 2007, Dr. Turnley noted that, while the claimant had a "little bit" of diminished range of motion in his lumbar spine, he had a normal gait and was able to get on and off of the exam table and in and out of his chair without difficulty.  (R. 271).  Additionally, in a 2007 examination at Riverview Regional Medical Center, the claimant complained of foot pain, but denied any musculoskeletal pain.  (R. 376).  Similarly, in 2008 and 2009, reports show that the claimant had full range of motion and no tenderness in his lumbar spine.  (R. 335, 356).

In light of the above evidence and reasoning, the court finds substantial evidence to support the ALJ's decision.  When the ALJ clearly articulates his creadibility finding with substantial supporting evidence, his decision will not be disturbed by a reviewing court.  *Foot v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  Therefore, because the ALJ's assessment of the claimant's credibility is clearly articulated and corroborated by objective medical evidence, the court concludes that substantial evidence exists to support the ALJ's conclusion that the claimant's testimony of disabling pain is not credible.

## IX.  CONCLUSION

The court concludes that the ALJ's determination that the claimant is not disabled is supported by substantial evidence, and that he applied proper legal standards in reaching this determination.  Therefore, the ALJ acted properly in rejecting the claimant's disability claims.  The Commissioner's final decision is, therefore, due to be **AFFIRMED**, and a separate order in

accordance with the memorandum of decision will be entered.

DONE and ORDERED this 29th day of March 2011.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE